UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANAYI BECKLES-CANTON,

                      Plaintiff,

      -against-

LUTHERAN SOCIAL SERVICES OF NEW YORK,
INC.,

                      Defendant.
------------------------------------------------------------------X

**COMPLAINT**

**Docket No.: 20-cv-4379**

Jury Trial Demanded

SANAYI BECKLES-CANTON ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against LUTHERAN SOCIAL SERVICES OF NEW YORK, INC. ("LSSNY" or "Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1.      This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to her by the False Claims Act ("FCA")'s anti-retaliation provisions, 31 U.S.C. § 3730(h), and any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendant – a Manhattan agency that receives federal funding to provide community services to individuals seeking assistance with food, shelter, and other needs-based services in the New York City area – from August 1, 2016 until February 5, 2018, as Defendant's Director of Family Services.

1

3. As described below, after Plaintiff discovered and investigated fraudulent acts that Defendant was committing involving the misappropriation of federal funds and subsequently complained about it both internally and to the federal program that was providing the funds, Defendant retaliated against Plaintiff, in violation of the FCA, by terminating her employment.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, as this matter arises under 31 U.S.C. § 3730(h).

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6. At all relevant times herein, Plaintiff worked for Defendant in New York, and was an "employee" entitled to protection as provided in 31 U.S.C. § 3730(h).

7. At all relevant times herein, Defendant was and is a New York not-for-profit corporation with its principal place of business located at 475 Riverside Drive, New York, New York 10115.

## BACKGROUND FACTS

8. Defendant operates a faith-based agency providing community services to individuals seeking assistance with food, shelter, and other needs-based services in the New York City area.

9. Head Start is a program of the United States Department of Health and Human Services, which provides the primary source of federal funding for Defendant's early childhood education centers for low-income children under the age of mandatory school attendance.

10. Because Defendant requested and received federal funds for its operations, Defendant was required under federal financial, program compliance, and audit regulations to use proper fiscal control and accounting procedures to ensure that expenditures reimbursed by federal funds were authorized in advance, were made only for eligible expenditures, and were accurately reported. *See* 34 C.F.R. § 80.20. These accounting and control procedures and records are critical to federal funding, as Defendant receives federal funds in response to its submissions showing actual expenditures for eligible expenses. Defendant's control and accounting procedures and documentation must accurately and fully account for the expenditures on eligible items in order to justify receipt of and avoid having to repay those federal funds. *See* 34 C.F.R. §§ 80.20, 80.21.

11. Defendant hired Plaintiff as its Director of Family Services on August 1, 2016, responsible for overseeing Defendant's education centers located in Brooklyn (1175 Gates Avenue, Brooklyn, New York), the Bronx (2125 Watson Avenue, Bronx, New York; 888 Westchester Avenue, Bronx, New York; and 80 East 181 Street, Bronx, New York), and Manhattan (1947 Park Avenue, New York, New York; 510 West 145th Street New York, New York; and 218 West 147th Street New York, New York).

12. Plaintiff's job responsibilities included, but were not limited to, hiring, training, and coaching Family Services Coordinators ("FSCs") in the Head Start Family Service model and program requirements, ensuring that FSCs maintained organized family files and other records, reviewing and tracking individualized Family Partnership Agreements, monitoring files and workload of the FSCs, submitting accurate and timely reports as required, and visiting early childhood education centers on a regularly scheduled basis.

13. In general, as described in greater detail below, while performing her job duties, Plaintiff learned about potential fraudulent acts committed by the Defendant in the form of misappropriation of funds through improper spending.

14. Specifically, in May 2017, Plaintiff, while reviewing records prepared by the FSCs, became aware that Defendant was fraudulently back-dating receipts of purchases for children's supplies, mainly with Lakeshore, a supply store specializing in learning products and teaching resources, in order to fully expend Defendant's current budget with Head Start.

15. Through investigation, Plaintiff learned that the practice was implemented in order to prevent Head Start from decreasing Defendant's budget for the next fiscal year, as the budget would be based on the previous year's spending. As a result, Defendant engaged in fraudulent and wasteful spending towards children's supplies, including furniture, tablets, and other expenditures in order for LSSNY to maintain its current budget. In order to avoid the scrutiny of such high-volume spending in a short period, Defendant had Lakeshore back-date the purchase receipts to misrepresent that the purchases had been made in previous recent months.

16. Additionally, Plaintiff learned that Defendant, at the direction of its Executive Director, Khamele McCleod-Cato, was charging $200.00 per student to attend its summer program, which was not permissible as Head Start is a federally funded program and therefore free of charge.

17. Thus, later in May 2017, Plaintiff informed Defendant's President and Chief Executive Officer, Damyn Kelly, about her knowledge of LSSNY's misappropriation and misuse of certain funds that Defendant received from the government.

18. Kelly responded that he would investigate the alleged incidents, but to Plaintiff's knowledge, Kelly ignored her complaint and never commenced an investigation.

19. Kelly did, however, speak to McCleod-Cato about Plaintiff's complaints. Indeed, in or around June 2017, McCleod-Cato made Plaintiff aware of this fact during a weekly leadership meeting, which occurred shortly after Plaintiff's complaint, specifically stating that "I know that you spoke to [Damyn] Kelly about the violations, but he told me that nothing was going to be done." In response, Plaintiff stated that "we have to take steps to pass federal regulations." McCleod-Cato then stated that she "will take care of it."

20. Plaintiff then had a meeting with Kelly later in August 2017, at which further discussed the spending issues involving Head Start funds. Kelly told Plaintiff that he would investigate the situation, but encouraged her to "be a team player" and to "keep things internal."

21. As a result of Plaintiff's refusal to heed to McCleod-Cato's warning to not go up the chain of command without her approval, the relationship between Plaintiff and McCleod-Cato continued to deteriorate as McCleod-Cato openly criticized Plaintiff and otherwise acted cold and hostile towards her. Indeed, McCleod-Cato informed Plaintiff that she was aware that Plaintiff complained directly to Kelly but that it was a mistake because Plaintiff had no authority. As a result, in late-August 2017, Plaintiff requested another meeting with Kelly to address McCleod-Cato's sudden hostility towards her and to express her concern that she was being retaliated against for her previous reporting of the incidents.

22. As a result, in September 2017, Kelly held a meeting with Plaintiff, at which he encouraged her to try other ways of working with the situation and dealing with McCleod-Cato, yet he failed to subsequently take any steps to curtail McCleod-Cate's conduct or prevent her from retaliating against Plaintiff.

23. In late-November 2017, Plaintiff learned that the issue with back-dating of receipts had continued despite Kelly's representation that he would investigate. As a result, Plaintiff made a written complaint to Head Start. In it, Plaintiff detailed the fraudulent and wasteful spending, the back-dating of the receipts, and the $200.00 charge to each child for attending the Head Start summer program.

24. In December 2017, Head Start asked Plaintiff to present a workshop in Austin, Texas, at an annual Parent Leader conference, one which Plaintiff attended each year.

25. Plaintiff attended the conference with Ramona Brightman, Defendant's Director of Program Governance, who invited a parent, Nichelle Wright, involved in the program, to attend.

26. From December 4 through December 7, 2017, the dates of the conference, Defendant failed to provide any policies or guidelines to be followed with respect to food or transportation expenses during the trip.

27. On February 5, 2018, McCleod-Cato, on behalf of Defendant, terminated Plaintiff's employment. According to Plaintiff's termination letter, Defendant terminated her employment for "serious misconduct – including misrepresentations and assisting in fraudulent behavior."

28. Specifically, Defendant accused Plaintiff of falsifying car service receipts to and from the airport while she was in Austin for the conference, which Defendant claimed Plaintiff either to have fraudulently submitted, or to have assisted the parent, Wright, in submitting.

29. According to McLeod-Cato, Plaintiff was also terminated for "mishandling LSSNY funds," and for allegedly treating Ms. Wright to a dinner on the trip totaling $130.99 on Wright's meal alone.

30. The stated reasons for Plaintiff's termination were abundantly false as: (1) Wright submitted her own receipts, which included the dinner and car service, and Plaintiff was never aware at any time of the information contained in the receipts submitted by Wright; and (2) Wright's attendance was the complete and sole responsibility of Brightman, and Plaintiff had absolutely nothing to do with her participation in the conference.

31. Indeed, despite the fact that Brightman was responsible for Wright's attendance, Brightman faced zero disciplinary action and McLeod-Cato instead decided to use this as an opportunity to terminate Plaintiff's employment because of Plaintiff's recently filed complaints of Defendant's fraudulent spending.

## CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the FCA*

32. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

33. 31 U.S.C. 3730(h) prohibits an employer from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against in the terms and condition of employment because of lawful acts done by the employee in furtherance of an action under the False Claims Act.

34. As described above, after Plaintiff engaged in activity protected under the FCA, Defendant retaliated by terminating Plaintiff's employment.

35. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FCA, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to reinstatement with the same seniority status that Plaintiff would have had but for the discrimination, double the amount of back pay, interest on the back pay, and compensation for any special damages sustained, including litigation costs and reasonable attorneys' fees.

## DEMAND FOR A JURY TRIAL

36. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. An award to Plaintiff for reinstatement with the same seniority status that Plaintiff would have had but for the unlawful retaliation;

b. An award to Plaintiff for double the amount of back pay owed, as well as interest on the back pay;

c. An award to Plaintiff for any special damages, including attorneys' fees and litigation expenses incurred in bringing this action under the FCA; and

d. Any and all further relief that the Court deems just and proper.

Dated: New York, New York
       June 8, 2020

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
655 Third Avenue, Suite 1821
New York, New York 10017
(212) 679-5000

By: _____
JEFFREY R. MAGUIRE (JM 1982)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)